**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MYRNA ZIDEK, | ) | |
| successor to DR. DENNIS ZIDEK, | ) | |
| and DR. WILLIAM P. GRESS, | ) | |
| on behalf of plaintiffs and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiffs, | ) | 13 C 7742 |
| | ) | |
| v. | ) | Judge Leinenweber |
| | ) | |
| ANALGESIC HEALTHCARE, INC., | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiffs Myrna Zidek, successor to Dr. Dennis Zidek, and Dr. William P. Gress respectfully request that this Court grant the Motion for Preliminary Approval of Settlement: (i) preliminarily certifying a class for settlement purposes; (ii) granting preliminary approval of the Settlement Agreement attached hereto as Appendix A; and (iii) appointing Myrna Zidek and Dr. William P. Gress as Class Representatives and Edelman, Combs, Latturner & Goodwin, LLC as class counsel. In support of this motion, Plaintiffs state as follows:

1. Plaintiffs filed the above-captioned lawsuit against defendants, Analgesic Healthcare, Inc. ("AHC") and John Does Nos. 1-10 (with AHC, "Defendants"), alleging that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2, and the common laws of conversion, private nuisance, and trespass to chattels, by sending unsolicited facsimile advertisements to Plaintiffs and other members of the nationwide class that did not contain an opt-out notice in the form required by 47 U.S.C. § 227.

2. Counsel for Plaintiffs and Defendants have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

3. Based upon this review and analysis, Plaintiffs and Defendants entered into the Settlement Agreement, attached hereto as <u>Appendix A</u>.[1]

4. The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement, including, without limitation, the following:

    a. <u>Class Certification</u>. The parties agree to the certification of a class, for settlement purposes only, consisting of:

> All persons and entities with facsimile numbers that, during the Class Period (October 29, 2009, through and including December 15, 2014) were sent one or more facsimile communications by, from or at the direction of AHC and/or John Does 1-10: (i) that did not contain Personal Health Information of any person; and (ii) regardless of whether they contained an opt-out notice as described in 47 U.S.C. § 227 and/or regulations promulgated by the Federal Communications Commission to implement the TCPA.[2]

AHC provided to Settlement Class Counsel a list of the transmission records for which AHC has records to which facsimile communications were sent, during the Class Period, that did not contain Personal Health Information of any individual (the "Fax List"). According to AHC's records, this number totals 21,279 faxes sent to approximately 3,042 unique fax numbers. Settlement Class Counsel has reviewed the list and determined that the persons on the list were

---

[1] All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

[2] As used herein, the term "<u>Personal Health Information</u>" means information that (i) is created, maintained or received by any health care provider, health care plan, employer, medical device manufacturer or supplier, or health clearinghouse, and (ii) relates to the past, present, or future physical or mental health or condition of any individual, the provision of health care (including without limitation any medical device), or the past, present or future payment for the provision of healthcare (including without limitation any medical device) to any individual.

sent between 1 and 114 faxes. AHC has made reasonable efforts to identify all unique fax numbers that were sent facsimile communications that did not contain Personal Health Information but do not have complete transmission records.

The parties disagree on whether the content of all of facsimile communications that did not contain Personal Health Information are actionable as "unsolicited advertisements" under the TCPA.[3] AHC contends that some Settlement Class Members are independent sales representatives affiliated with it and that they were likely sent "transactional communications" and not "unsolicited advertisements." For settlement purposes, all facsimile communications sent by, from or at the direction of AHC and/or John Does 1-10 during the Class Period that do not contain Personal Health Information (21,279 facsimiles) are included in the proposed settlement class definition.

   5. <u>Settlement Recovery</u>. Defendants shall collectively create a $550,000.00 Settlement Fund (hereinafter "the Settlement Fund"). The Settlement Fund will be distributed as follows:

   a. Reasonable costs of notice and administration will be paid from the Settlement Fund up to a maximum of $20,000.

   b. Plaintiffs' counsel's attorney's fees must be approved by the Court. Plaintiffs' counsel shall submit a request for attorney's fees in an amount not to exceed 1/3 of the Net Settlement Fund ($550,000 Settlement Fund less notice and administrative expenses).

   c. Plaintiffs' incentive awards must be approved by the Court.

---

[3] For example, over 200 of the recipients were parties to a written contract with AHC, called an "Independent Representative Agreement." These Independent Representatives were paid by AHC for services they provided under these agreements. Accordingly, AHC maintains that these recipients, who were sent thousands of the 21,279 facsimiles, consented to receiving faxes from AHC, had a business relationship with AHC and/or were sent "transactional communications," and not "unsolicited advertisements." AHC also maintains that many thousands of the 21,279 facsimile transmissions were not "unsolicited advertisements" for other reasons. Plaintiffs dispute AHCs contentions.

Plaintiff Dr. William P. Gress shall request an award of $8,000 and Plaintiff Myrna Zidek shall request an award of $8,000, as incentive awards for their services as Class Representatives. This amount shall be in addition to any amount Plaintiffs may recover as a Settlement Class Member.

        d.    If the deductions described in subparagraphs (a)-(c) are approved by the Court, the Distributable Settlement Fund (Net Settlement Fund less any Court-awarded incentive awards to the Plaintiffs and any attorney's fees) will be divided *pro rata* among Settlement Class Members who timely submit a valid Claim Form per each fax transmission received. Settlement Class Members may submit Claim Forms for more than one fax number and more than one settlement share. If AHC's records do not indicate how many faxes were sent to a Settlement Class Member, and the Settlement Class Member cannot provide proof of the number of faxes received, then the Settlement Class Member shall be entitled to a single pro rata share or shares per unique fax number (this includes those who submit claims in response to the Publication Notice). No Settlement Class Member shall receive payment for more than twenty (20) facsimiles.[4]

        e.    All settlement checks shall be void 60 days from the date of issuance and shall so state on the check. Any unclaimed or undistributed amounts remaining in the Settlement Fund after all payments required under the Settlement Agreement have been made shall be distributed to a *cy pres* recipient, selected by AHC and approved by the Court.

    6.    <u>Class Notice</u>. The Settlement Agreement provides for notice by facsimile and publication. Several courts both within and outside this District have approved the sending of notice by facsimile in TCPA class action settlements. *See e.g.*, <u>C.E. Design, Ltd. v. King</u>

---

[4] AHC contends that each of its Independent Representatives were likely sent more than 20 faxes by AHC and/or John Does 1-10 that did not contain Personal Health Information.

Supply Co., LLC, 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012); Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc., 12 C 780 (N.D. Ill.) (*Dkt. No. 73*) (fax and publication notice); Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Medical-Surgical Supply Co.*,* 12 C 5608 (N.D. Ill.) (*Dkt No. 90*) (fax notice); Dr. William P. Gress v. Northwood, Inc., 12 C 7278 (N.D. Ill.) (*Dkt. No. 38*) (fax and mail notice); Able Home Health, LLC v. Healthy Advice Communications, Inc., 12 C 3019 (N.D. Ill.) (*Dkt. No. 60*) (fax and mail notice); Richard Wade Architects, P.C. v. Engineering Services and Products Company, 11 C 9251 (N.D. Ill.) (*Dkt. No. 58*) (fax notice); City Select Auto Sales, Inc. v. David Randall Associates, Inc., 11-2658 (JBS/KMW), 2014 WL 413533 (D.N.J. Feb. 3, 2014). Vandervort v. Balboa Capital Corp., SACV 11–1578–JLS (JPRx), 2014 WL 1274049 (C.D. Cal. March 27, 2014); A & L Industries, Inc. v. P. Cipollini, Inc., 12-07598, 2014 WL 906180, at *1 (D.N.J. March 7, 2014) (rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally..."). See MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd., 08 C 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) (Court allowed service of summons and complaint to Chinese defendants by email and fax); Fed. R. Civ. P. 4 Commentary provides that a waiver of service may be sent by fax.

The Settlement Agreement provides that within 5 days after entry of the Preliminary Approval Order, AHC's counsel shall provide the Fax List to Settlement Class Counsel and/or the Class Administrator. Within 35 days after entry of the Preliminary Approval Order, the Class Administrator shall cause Notice (Exhibit 1 to the Settlement Agreement, which includes a Claim Form) to be sent to the facsimile numbers identified on the Fax List. A supplemental notice by fax and/or U.S. Mail (if addresses are ascertainable) will be sent within

21 days of the date that the first Notice is sent. Settlement Class Members shall have at least 60 days after the first date on which Notice is sent to submit a Claim Form, request exclusion from the Settlement Agreement, or object to the Settlement Agreement.

Class Counsel will also post the Notice in the form of <u>Exhibit 1</u> to the Agreement, excluding a Claim Form, and the Settlement Agreement (excluding exhibits) on their firm's website, http://www.edcombs.com

The Class Administrator may create a website which allows for electronic submission of Claim Forms. Any website created by the Class Administrator may also post the Class Notice (<u>Exhibit 1</u>), Claim Form, Preliminary Approval Order and Settlement Agreement (excluding exhibits). In addition to online claims submission, the Class Administrator will also accept Claim Forms by U.S. Mail and fax.

Notice to Settlement Class Members whose prior or current fax numbers are not on the Fax List or otherwise in the possession of AHC shall be by a publication notice (the "Publication Notice"). Publication Notice in the form of <u>Exhibit 2</u> to the Settlement Agreement will be published one time in the following publications which serve primarily chiropractors and physical therapists: *ACA News Magazine, Dynamic Chiropractic, The American Chiropractor*, and either *PT Journal* and/or *PT in Motion*, *Journal of the American Physical Therapy Association*. Each Publication Notice shall be no less than ¼ page. The Publication Notice shall appear in the publications identified herein on the same date that the Class Notice by fax is initially transmitted.

7. <u>Class Members' Right to Opt Out</u>. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the

Settlement Class shall not be bound by any prior Court order or the terms of the Settlement Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement. Class members will have at least 60 days after the first date on which Notice is sent to opt out of the Settlement Agreement.

8. <u>Claim Form</u>. In order to receive the consideration provided under the Settlement Agreement, each Settlement Class Member must timely return a Claim Form which will be provided with the Notice sent via facsimile. The Publication Notice will refer to a website created and maintained by the Class Administrator that posts the documents identified above and provides a method to obtain an electronic Claim Form that may be downloaded from the Class Administrator's website or submitted electronically. The Class Administrator shall provide Settlement Class Members with the option to return a claim form by U.S. Mail, fax, or through a dedicated website. After the deadline for the receipt of claim forms expires, the Class Administrator will determine the number of valid Claim Forms received and the number of corresponding transmissions for each claimant.

9. <u>Class Members' Right to Object</u>. Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing to Class Counsel and counsel for Defendants a written objection within the time period set by this Court. Any member who objects to the Settlement Agreement may appear and be heard at the final approval hearing. Class Members will have at least 60 days after the first date on which actual Notice is sent to object to the Settlement Agreement.

10. <u>If Settlement Agreement Terminated or Not Approved</u>. Prior to the Effective Date, as that date is defined in the Settlement Agreement, if the Settlement Agreement is terminated pursuant to its terms or for any other reason, or is disapproved in a final order by

any court of competent jurisdiction, (a) any order certifying the Settlement Class and all preliminary and/or final findings or stipulations regarding certification of the Settlement Class shall be automatically vacated upon notice to the Court of this Settlement Agreement's termination or disapproval; (b) this Litigation will proceed as though the Settlement Class had never been certified and any related findings or stipulations had never been made and neither the Settlement Agreement, nor any of its exhibits , nor any other associated settlement document may be used in seeking class certification; and (c) Defendants reserve all procedural and substantive rights as of the date of execution of the Settlement Agreement.

11. Federal Rule of Civil Procedure 23(a) makes class certification appropriate in cases where:

> **(1) The class is so numerous that joinder of all members is impracticable,**
>
> **(2) There are questions of fact or law common to the class,**
>
> **(3) The claims or defenses of the representative parties are typical of the claims defenses of the class, and**
>
> **(4) The representative parties will fairly and adequately protect the interest of the class.**

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and:

> **the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.**

As demonstrated below, each of the requirements for certification of the Settlement Class is met.

a. <u>Rule 23(a)(1) -- Numerosity</u>. Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. <u>Kulins v. Malco</u>, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); <u>Swanson v. American Consumer Industries</u>, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); <u>Cypress v. Newport News General & Nonsectarian Hosp. Ass'n</u>, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); <u>Riordan v. Smith Barney</u>, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); <u>Sala v. National R. Pass. Corp.</u>, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); <u>Scholes v. Stone, McGuire & Benjamin</u>, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).

In the present case, the Fax List demonstrates that 21,279 faxes were sent to 3,042 unique fax numbers. This plainly satisfies the numerosity requirement.

b. <u>Rule 23(a)(2) -- Commonality; and Rule 23(b)(3) - Common Questions of Law or Fact Predominate</u>. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. <u>Blackie v. Barrack</u>, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. <u>McClendon v. Continental Group, Inc.</u>, 113 F.R.D. 39, 43-44 (D.N.J. 1986); <u>Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); <u>Spicer v.

Chicago Board Options Exchange, CCH Fed. Sec. L. Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); Alexander Grant & Co. v. McAlister, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D.Ill. 1984); Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

(1) Whether Defendants are engaged in a pattern of sending unsolicited facsimile advertisements;

(2) Whether Defendants sent, or caused to be sent, the facsimiles at issue;

(3) Whether Defendants thereby violated the TCPA;

(4) Whether Defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

(5) Whether Defendants thereby converted the property of Plaintiffs and other Settlement Class Members.

(6) The manner in which Defendants compiled or obtained their list of facsimile numbers.

The Settlement Class is defined in terms of all persons and entities with facsimile numbers that, during the Class Period, were sent one or more facsimile communications by, from or at the direction of AHC and/or John Does 1-10: (i) that did not contain Personal Health Information of any person, and (ii) regardless of whether they contained an opt-out notice as described in 47 U.S.C. § 227 and/or regulations promulgated by the Federal Communications Commission to implement the TCPA.

Several courts have certified class actions under the TCPA. Holtzman v. Turza, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); CE Design Ltd. v. Cy's Crabhouse North, Inc., 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd., 679 F.Supp. 2d 894 (N.D. Ill 2010); Garrett v. Ragle Dental Lab, Inc., 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir. 2007); Transportation Institute v. Promo Dart, Inc., No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); Kavu, Inc. v. Omnipak Corporation, 246 F.R.D. 642 (W.D. Wash. 2007); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Airz. (App.) 94, 50 P.3d 844 (2002); Critchfield Physical Therapy v. Taranto Group, Inc., 293 Kan. 285, 263 P.3d 767 (2011); Karen S. Little, LLC v. Drury Inns, Inc., 306 S.W.3d 577 (Mo. App. 2010).

    c. Rule 23(a)(3) – Typicality. Rule 23 requires that the claims of the named Plaintiffs be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

De La Fuente v. Stokely Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

  In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named Plaintiffs, namely they are persons and entities with facsimile numbers that during the Class Period, were

sent one or more facsimile communications by, from or at the direction of AHC and/or John Does 1-10: (i) that did not contain Personal Health Information of any person, and (ii) regardless of whether they contained an opt-out notice as described in 47 U.S.C. § 227 and/or the regulations promulgated by the Federal Communications Commission to implement the TCPA.

    d.  <u>Rule 23(a)(4) -- Adequacy of Representation</u>. The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992).

    Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and claims involving unlawful business practices. Edelman, Combs, Latturner & Goodwin, LLC's qualifications are set forth in <u>Appendix B</u>. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

    e.  <u>Rule 23(b)(3) -- Class Action Is Superior to Other Available Methods of Resolving This Controversy</u>. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." <u>Brady v. LAC, Inc.</u>, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

    The special efficacy of the consumer class action has been noted by the courts and

is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

Lake v. First Nationwide Bank, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

12. Counsel for Plaintiffs and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the class members.

13. On July 1, 2014, another class action complaint was filed against AHC alleging that AHC violated the TCPA and committed common law conversion by transmitting unsolicited facsimile advertisements that did not display a proper opt-out notice. That case is currently pending in the United States District Court for the Eastern District of Missouri, Case No. 4:14-CV-01184 AGF (the "Missouri Litigation"). The claims alleged in the Missouri Litigation are based on the same underlying facts as the claims alleged in this case and both

complaints attached as exhibits the same design of a facsimile advertisement. Douglas Phillip Brust, D.C., P.C. and all of the putative class members in the Missouri Litigation are members of the proposed Settlement Class under the Settlement Agreement.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order in the form of <u>Exhibit 3</u> to the Agreement, which (i) grants preliminary approval of the proposed settlement, (ii) appoints Myrna Zidek and Dr. William P. Gress as Class Representatives and Edelman, Combs, Latturner & Goodwin, LLC as class counsel; (iii) directs the faxing of the Class Notice and a Claim Form in the form of <u>Exhibit 1</u> to the Settlement Agreement, and publication of the Class Notice in the form of <u>Exhibit 2</u> to the Settlement Agreement (iv) sets dates for submission of Claim Forms, opt-outs, appearances and objections, and schedules a hearing for final approval under Fed. R. Civ. P. 23(c)(2).

Respectfully submitted,

s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
*Counsel for Plaintiffs Myrna Zidek and Dr. William P. Gress*

# CERTIFICATE OF SERVICE

I, Heather Kolbus, certify that on February 5, 2015, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF system, which will cause notification of such filing to be served upon the following:

Julia R. Lissner (julia.lissner@akerman.com)
Stacey L. Callaghan (Stacey.callaghan@akerman.com)
AKERMAN LLP
71 S. Wacker Drive, 46th Floor
Chicago, IL 60606

Mark J. Bernet (mark.bernet@akerman.com)
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, FL 33602

In addition, I certify that on February 5, 2015, I caused a true and accurate copy of the foregoing document to be served, via email and US Mail, on the following parties:

Max G. Margulis (maxmargulis@margulislaw.com)
MARGULIS LAW GROUP
28 Old Belle Monte Rd.
Cesterfield, MO 63017

Chad D. Silker (cds@carmodymacdonald.com)
Tina N. Babel (tnb@carmodymacdonald.com)
CARMODY MACDONALD P.C.
120 South Central, Suite 1800
St. Louis, MO 63105

Brian J. Wanca (bwanca@andersonwanca.com)
ANDERSON + WANCA
3710 Algonquin Rd. Suite 760
Rolling Meadows, IL 60008

                                                    s/ Heather Kolbus
                                                    Heather Kolbus

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC

20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)